BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION | MDL Docket No. 2948 |

**PLAINTIFF AND MOVANT AUSTIN RECHT'S MEMORANDUM IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-3)**

Pursuant to Panel Rule 7.1(f), Plaintiff and Movant Austin Recht ("Movant") respectfully submits this Memorandum in Support of his Motion to Vacate Conditional Transfer Order ("CTO-3"), as it relates to *Austin Recht v. TikTok Inc., et al*., No. 2:22-cv-08613-MEMF-AGR (C.D. Cal. Nov. 25, 2022) (the "*In-App Browser* Action"), and five other newly-filed related cases.[1]

**I.      INTRODUCTION**

The United States Judicial Panel on Multidistrict Litigation (the "Panel") issued CTO-3 on December 14, 2022, conditionally transferring the *In-App Browser* Action to the U.S. District Court for the Northern District of Illinois to be coordinated or consolidated with now-terminated

---

[1] Presently there are five additional related "in-app browser" cases that were filed in the Central District of California, the Eastern District of Pennsylvania, the Southern District of New York, the District of New Jersey, and the Northern District of Illinois. The related "in-app browser" cases assert essentially the same claim—that Defendants' use of an in-app browser to intercept and monitor users' activity on third-party websites constitutes an illegal intercept of wire communications without the necessary consent. Movant has filed a Motion to Transfer all these related cases to the Central District of California for coordination or consolidated pretrial proceedings.

1

*In Re: TikTok, Inc., Consumer Privacy Litigation*, MDL No. 2948 (the "*Biometric Data* MDL").[2] Good cause exists to vacate CTO-3 because: (1) the actions do not involve common questions of fact, claims, or forms of relief; (2) transfer of the *In-App Browser* Action will not promote the just and efficient conduct of the actions; and (3) transfer of the *In-App Browser* Action will not further the convenience of the parties or witnesses.  Furthermore, transfer and coordination will severely prejudice Movant, and the plaintiffs in additional newly-filed related cases, because the *Biometric Data* MDL was settled without adjudication of any of the claims at issue in Movant's case, transfer would prejudice the *In-App Browser Action's* unique claims from ever being heard, and would prevent Movant from obtaining any form of relief for himself and the classes he seeks to represent.

## II. ARGUMENT

### A. The *In-App Browser* Action and *Biometric Data* MDL Do Not Involve One or More Common Questions of Fact

#### 1. The Factual Allegations Giving Rise to the Two Actions are Materially Different

The *In-App Browser* Action, and related "in-app browser" cases are founded on information that first came to light on August 18, 2022, in a report published by a software researcher, Felix Krause, detailing the risk of in-app internet browsers and the specific JavaScript codes inserted into third-party websites by Defendants' in-app browser.[3]  The Krause article was published nearly **two years after** the *Biometric Data* MDL plaintiffs reached a settlement of

---

[2] *In re TikTok Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, (N.D. Ill. Dec. 18, 2020) (MDL Case No. 2948), ECF No. 97.

[3] *Id.*, at ¶¶ 99-102, 139-144.

2

their claims.[4]  Thus, the *Biometric Data* MDL did not – and could not – include allegations involving TikTok's use of an in-app browser to track user activity on third party websites because those facts were not yet known to TikTok app users or the general public.  Thus, the *In-App Browser* Action and the *Biometric Data* MDL do not, and could not, involve common questions of fact.

The crux of the *In-App Browser* Action is that Defendants illegally and secretly used an in-app browser to intercept and access Movant's and Class Members' personal activity on third-party websites outside of the TikTok app.[5]  As Movant alleges, Defendants' in-app browser uses JavaScript code insertions to track and intercept every detail about a TikTok user's activity on a third-party website, including every keystroke, every tap on any button, link, image, or other component on any website, and details about the elements the user clicked, without the user knowing.[6]  As such, Movant and Class Members' claims arise when they access a third-party website, unknowingly through Defendants' in-app browser, and have every detail of their communications with such third-party websites intercepted and tracked by Defendants.  The allegations in the *In-App Browser* Action do not involve making or recording videos, sharing videos, sending messages or any other activity involving the "video sharing application" that formed the basis of the class definition in the *Biometric Data* MDL.

---

[4] *See Biometric Data* Settlement Agreement and Release, signed on September 4, 2020, available at https://angeion-public.s3.amazonaws.com/www.TikTokDataPrivacySettlement.com/docs/Settlement+Agreement+and+Release.pdf.

[5] *See, e.g.*, *Austin Recht v. TikTok Inc., et al.*, No. 2:22-cv-08613-MEMF-AGR (C.D. Cal. Nov. 25, 2022), ECF No. 1 (the "*In-App Browser* Complaint"), at ¶¶ 2-5, 101.

[6] *Id.*, at ¶¶ 3-5, 136-37.

The *Biometric Data* MDL plaintiffs alleged strikingly different conduct and categories of collected data as the basis for their claims. As the Panel previously described, the common questions of fact in the *Biometric Data* MDL involved "**defendants' conduct with respect to the scanning, capture, retention and dissemination of facial geometry and other biometric information of users of the app**." *In re: TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp.3d 1331, 1331 (J.P.M.L. 2020) (emphasis added). The *Biometric Data* Complaint alleged that Defendants invaded their users' privacy by employing specific methods and tools to extract data, including: tracking, monitoring, and recording users' **private videos recorded** in the app before users are given a choice whether to save or post them[7], collecting data, including close-ups of faces and private acts unintended for public consumption[8], thumbnail images **from recorded videos**[9], **biometric features** and information **from recorded videos**[10], and login information from other social media accounts[11], private messages[12], information added to users' digital "clipboards"[13], and **face geometry scans**[14].

When the *Biometric Data* MDL plaintiffs moved for preliminary approval, they also described their claims under the Illinois Biometric Information Privacy Act as their "core

---

[7] *Id.*, at ¶¶ 145-152.

[8] *Id.*, at ¶ 145.

[9] *Id.*, at ¶ 150.

[10] *Id.*, at ¶ 152.

[11] *Id.*, at ¶ 158.

[12] *Id.*, at ¶ 176.

[13] *Id.*, at ¶ 181.

[14] *Id.*, at ¶ 240.

claims," and represented that their "core claims" arose when Defendants used "a complex system of artificial intelligence to recognize facial features in users' videos, which allows the user to use various filters and stickers."[15] Those "core claims" never included allegations regarding TikTok's use of its in-app browser to intercept and monitor users' activities **on third-party websites**.

These stark differences in the alleged conduct and injury between the two actions warrant the vacating of CTO-3.  *See, e.g.*, *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, Order Vacating Conditional Transfer Order, Dkt. No. 1511 at p. 2 (J.P.M.L. Aug. 3, 2022) (vacating conditional transfer order of case not involving aqueous film-forming forms, where party seeking transfer only submitted "evidence purporting to show the potential for commingling of PFAS from AFFF and non-AFFF sources") ("MDL No. 2873"); *In re: Google Digital Advertising Antitrust Litig.*, MDL No. 3010, Order Vacating Conditional Transfer Order, Dkt. No. 194 at p. 2 (J.P.M.L. June 1, 2022) (vacating conditional transfer where "non-common issues far exceed the common issues") ("MDL No. 3010"); *In re: Navistar Maxxforce Engines Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2590, Order Vacating Conditional Transfer Order, Dkt. 208 at 2 (J.P.M.L. Feb. 4, 2018) ("unique factual and legal inquires" "likely will overwhelm any commonalities that may exist") ("MDL No. 2590").

        2.    <u>The Materially Different Factual Allegations of the Two Actions Support Materially Different Causes of Action</u>

Given the lack of common facts between the *In-App Browser* Action and the *Biometric Data* MDL, it is not surprising that they assert materially different causes of action and requests for relief.  For instance, Movant's claims in the *In-App Browser* Action arise from Defendants' use of an in-app browser to secretly intercept personal information and data during users'

---

[15] *See Biometric Data* MDL, ECF No. 122 (Plaintiffs' Motion for Preliminary Approval of Class Action Settlement), at p. 3.

5

communications with third-party websites. Based on those facts, Movant asserts claims for violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, among others.[16]

The Federal Wiretap Act and California Invasion of Privacy Act prohibit the interception, eavesdropping on, or invasion of privacy regarding any wire, oral, or electronic communications without the consent of at least one party (two under California law) to the communication. The Federal Wiretap Act, for example, confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter."[17] According to Movant's allegations in the *In-App Browser* Action, "[t]he JavaScript [codes] inserted by TikTok that copy every keystroke, every tap on any button, link, image or other component and the details about the elements users clicked on constitute a 'device or apparatus' that is used to intercept a wire, oral, or electronic communication because they are electronic means of acquiring the contents of users' wire, electronic or oral communications via Defendants' in-app browser."[18] Movant's Complaint further alleges that "interception of Plaintiff's and Class Members' electronic communications without their consent occurred whenever a user clicked on a link to a website external to TikTok."[19]

The *Biometric Data* MDL plaintiffs assert no cause of action for violations of the Federal Wiretap Act or California Invasion of Privacy Act. Instead, the *Biometric Data* MDL plaintiffs assert claims under the Computer Fraud and Abuse Act, the California Comprehensive Data

---

[16] *See In-App Browser* Complaint, at ¶¶ 158-172.

[17] 18 U.S.C. § 2520(a).

[18] *See In-App Browser* Complaint, at ¶ 165.

[19] *Id.*, at ¶ 168.

Access and Fraud Act, the Video Privacy Protection Act, and their "core claim," the Illinois Biometric Information Privacy Act, among others.[20] Those claims, as alleged in the *Biometric Data* Complaint, arose when the plaintiffs in those actions recorded videos, posted videos, searched for videos and liked videos while using the video-sharing functions of the app.[21]

The absence of claims under the Federal Wiretap Act and California Invasion of Privacy Act in the *Biometric Data* Complaint means that those claims could not have been litigated in the *Biometric Data* MDL, and the relief associated with the causes of action could not have been recovered by those plaintiffs. Therefore, transferring the *In-App Browser* Action for coordination or consolidation with the *Biometric Data* MDL would not "promote the just and efficient conduct of such actions" as required by 28 U.S.C. § 1407(a) or contemplated by Panel Rule 1.1(h). *See* MDL No. 2590, Dkt. 208 at 2 (transfer was inappropriate where different underlying theories between MDL 2590 (direct purchaser action) and the action subject to potential transfer (bankruptcy adversary proceeding) would involve unique factual and legal inquiries and would overwhelm any commonality that may exist); *In re: Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406, Order Vacating Conditional Transfer Order, Dkt. No. 424 at p. 1 (J.P.M.L. Feb. 5, 2018) ("[T]here is some overlap . . . but that overlap strikes us as largely tangential to the antitrust allegations at the heart of the MDL. Plaintiff brings no antitrust claims, and while the operative complaint describes the operation of the BlueCard program, it does not contain allegations typical of MDL No. 2406 cases") ("MDL No. 2406").

---

[20] *See In-App Browser* Complaint, at pp. 92-114.

[21] *See Biometric Data* Complaint, at pp. 5-19.

   3.  <u>The Two Actions Involve Different Classes Seeking Materially Different Kinds of Statutory and Injunctive Relief</u>

On August 22, 2022, Judge John Lee entered his Order and Final Judgment Granting Final Approval of Class Action Settlement in the *Biometric Data* MDL.[22] The terms of the *Biometric Data* MDL settlement evidence that the class settling its biometric data claims is different than the class represented in the *In-App Browser* Action and that the different classes seek materially different relief.

For example, the Nationwide Class and **<u>Illinois</u>** Subclass certified for settlement purposes in the *Biometric Data* MDL included persons who used the video-sharing functions of the TikTok application[23], whereas the Nationwide Class and **<u>California</u>** Subclass defined in the *In-App Browser* Action include all persons who used the TikTok application to visit external websites via Defendants' in-app browser[24]. Not surprisingly, as described above, those classes assert different claims that entitle them to different relief.[25] The settlement terms outlined by

---

[22] *See Biometric Data* MDL, ECF No. 264 (Order and Final Judgment Granting Final Approval of Class Action Settlement).

[23] *Id*., at ¶ 2 (defining the Nationwide Class as, "All persons who reside in the United States who used the App – the TikTok video sharing application (or its Musical.ly predecessor) distributed in the United States – prior to September 30, 2021" and the Illinois Subclass as, "All persons who reside in the State of Illinois and used the App – the TikTok video-sharing application (or its Musical.ly predecessor) distributed in the U.S. – in the State of Illinois to create videos prior to September 30, 2021").

[24] *See In-App Browser* Complaint, at ¶ 145 (defining the Nationwide Class as, "All natural persons in the United State whose used the TikTok app to visit websites external to the app, via the in-app browser" and the California Subclass as, "All natural persons residing in California whose used the TikTok app to visit websites external to the app, via the in-app browser").

[25] Violations of the Federal Wiretap Act entitle the prevailing party to, among other things, statutory damages of whichever is the greater of $100 per day per violation or $10,000. 18 U.S.C. § 2520. California's Invasion of Privacy Act similar allows for the recovery of $5,000 per violation, or three times the amount of damages sustained as a result of a violation. Cal.

Judge Lee, including the class definitions and the "core claims" alleged, confirm that the *Biometric Data* MDL did not encompass the claims and injuries asserted in the *In-App Browser* Action. However, even if they did, the *In-App Browser* Action's allegations of Defendants' improper and surreptitious use of an in-app browser occurred before and continue well beyond September 30, 2021, the end of the class period applicable to the *Biometric Data* MDL settlement. Therefore, the *In-App Browser* class would receive **no relief at all** if transferred to the *Biometric Data* MDL and forced to subsume their claims into the now terminated *Biometric Data* MDL settlement.

Further, the two actions seek materially different forms of injunctive relief. The *In-App Browser* Action seeks, among other things, to enjoin Defendants' surreptitious use of its in-app browser to access and intercept private data shared with third-party websites.[26] However, the injunctive relief sought in the *Biometric Data* MDL includes no mention of TikTok's wiretapping activities through the in-app browser or the interception of personal information and data with third-party websites. That is because the *Biometric Data* MDL plaintiffs fashioned the injunctive relief only "to remedy the complained-of conduct" in that case.[27]

Against the backdrop of the "complained-of conduct" in the *Biometric Data* MDL, Judge Lee discussed the "affirmative obligations" that outline the specific conduct the *Biometric Data* MDL defendants must refrain from engaging in:

---

Penal Code § 637.2. Neither of these remedies were sought, or recovered, by the *Biometric Data* plaintiffs.

[26] *See In-App Browser* Complaint, at ¶ 239(b).

[27] *See Biometric Data* MDL, ECF No. 122 (Plaintiffs' Motion for Preliminary Approval of Class Action Settlement), at p. 30.

  a. Using the TikTok App ("App") to collect or store a user's biometric information or identifiers (as defined by applicable law);
  b. Using the App to collect geolocation or GPS data;
  c. Using the App to collect information in user's clipboards;
  d. Using the App to transmit United States user data outside of the United States;
  e. Storing United States user data in the databases outside of the United States; or
  f. Pre-uploading United States user-generated content.

Thus, the injunctive relief ultimately obtained in the *Biometric Data* MDL does not include the basic and critical conduct alleged in the *In-App Browser* Action. The reason for this divergence is the fact that the two actions are based on a wholly separate and different set of factual allegations.

  **B.** **Transfer and Consolidation or Coordination of the *In-App Browser* Action with the *Biometric Data* MDL Will Not Promote the Just and Efficient Conduct of the Actions**

    1. <u>The *Biometric Data* MDL is a Settled and Terminated Action That is No Longer Assigned to the Judge Which Oversaw the *Biometric Data* MDL</u>

Defendants' Notice of Potential Tag-Along Action[28] which initiated CTO-3 is a thinly-veiled attempt to bury the *In-App Browser* Action in an MDL that is already settled and terminated. According to the November 30, 2022, **Joint** Status Report filed and signed by counsel for the parties in the *Biometric Data* MDL (*including defense counsel in Movant's case*):

> On August 22, 2022, Judge Lee entered an Order and Final Judgment Granting Final Approval of Class Action Settlement (the "Final Judgment") in this matter. (ECF 264). **Pursuant to Paragraph 20 of the Final Judgment, the Court dismissed the MDL and "all member cases related to and/or consolidated with this action, and all claims currently pending before it** belonging to Class Members who did not request exclusion from the Class in the time and manner provided for in the Class Notice…"
>
> . . .

---

[28] *See Biometric Data* MDL, ECF No. 96 (Notice of Potential Tag-Along Action).

> Pursuant to the Final Judgment and the October 12, 2022, Order of Dismissal, therefore, **the Final Judgment became effective, and this MDL and all member cases have been terminated**.[29]

Thus, Final Judgment has been entered in the *Biometric Data* MDL, pending appeals have been dismissed, and "the majority of the $92,000,000.00 settlement fund has been distributed…."[30]  Furthermore, Judge Lee, to whom the *Biometric Data* MDL was originally assigned, is no longer the Judge assigned to the case; the matter having been assigned to the Honorable Rebecca R. Pallmeyer in October 2022.[31]

Given the settled and now-terminated status of the *Biometric Data* MDL and the fact that the case is no longer pending before a Judge familiar with the terminated proceedings, transferring the *In-App Browser* Action will in no way promote the just and efficient conduct of the two actions within the meaning of Section 1407(a).  *See In re: Puerto Rican Cabotage Antitrust Litig.*, MDL No. 1960, Dkt. 160 (J.P.M.L. Aug. 8, 2012) ("MDL No. 1960") (vacating a conditional transfer order where, "[p]roceedings in MDL No. 1960 have been completed for several months, however, and the majority of defendants settled almost one year ago").  Notably, the case for vacating CTO-3 under the present circumstances is even stronger than in MDL No. 1960 because, unlike that case, there are no common question of fact between the *Biometric Data* MDL and the *In-App Browser* Action.

---

[29] *See Biometric Data* MDL, ECF No. 280 (Joint Status Report), at p. 1 (emphasis added).

[30] *Id.* ("As of November 21, 2022, the majority of the $92,000,000.00 settlement fund has been distributed and only $3,244,884.27 remains").

[31] *See Biometric Data* MDL, ECF No. 275 (Order Reassigning Litigation).

2. The Class Notice in the *Biometric Data* MDL Focused on Users Who Made, Shared, and Viewed Videos

Given the *Biometric Data* MDL is already settled and terminated, class notices have already issued which notify potential class members of the available forms of relief stemming from that settlement. As noted above, the certified settlement classes only included users who used TikTok as a video-sharing application.[32] Similarly, the class notices made clear that the *Biometric Data* MDL settlement resolved claims related to that action's video recording, video uploading, and video liking that were at issue in the *Biometric Data* MDL, rather than claims that may relate to use of TikTok's in-app browser or third-party websites.

In fact, the *Biometric Data* MDL's settlement website homepage provides the following notice to class members about the nature of the case and the type of data privacy at issue:[33]

> **If you and/or your minor child used the TikTok and/or Musical.ly application, You May Be Entitled to a Payment from a Class Action Settlement.**
>
> If you live in Illinois and used the TikTok app in Illinois to create videos, you may be entitled to up to 6x the Payment.
>
> - Plaintiffs filed a class action complaint alleging that TikTok, Inc. f/k/a Musical.ly, Inc; ByteDance, Inc.; Musical.ly n/k/a TikTok, Ltd. and Beijing ByteDance Technology Co. Ltd. (collectively, the "Defendants"), violated federal and state law by collecting and using, without sufficient notice and consent, Plaintiffs' personal data in connection with their use of the TikTok - Make Your Day video-sharing application (and/or its predecessor app Musical.ly) distributed in the U.S. (the "App.").

As noted on the website, the *Biometric Data* MDL class action alleges TikTok collected, and used, "without sufficient notice and consent, Plaintiffs' personal data **in connection with their use of the TikTok – Make Your Day video-sharing application** (and/or its predecessor app Musical.ly) distributed in the U.S." (emphasis added). The definition and notice are

---

[32] *See Biometric Data* MDL, ECF No. 122, Motion for Prelim. Approval at 11.

[33] The *Biometric Data* MDL Class Settlement Website, at tiktokdataprivacysettlement.com (last accessed on 12/21/2022).

consistent with the *Biometric Data* MDL's focus on users using the video-sharing function in the TikTok app, rather than the in-app browser while accessing third-party websites. A potential class member who reads that description would reasonably interpret it to mean that he or she would not be entitled to relief for anything other than use of the "Make Your Day" video-sharing app. Such exclusion would include Movant and all other plaintiffs who were injured because their personal activities on third-party websites were intercepted and monitored by Defendants through TikTok's in-app browser.

Moreover, the Claim Form provided to class members in the *Biometric Data* MDL only asks three questions, **none of which relate to Defendants' in-app browser or Defendants' interception of personal information and data with third-party websites**:[34]

| II. CLASS MEMBER DETAILS | |
|---|---|
| Do you currently reside in the United States? | Yes ☐ No ☐ |
| Are you both (1) a resident of Illinois (2) who used the TikTok – Make Your Day video-sharing application (and/or its Musical.ly predecessor) to **create** videos while living in Illinois? | Yes ☐ No ☐ |
| Did you use the TikTok - Make Your Day video-sharing application (and/or its Musical.ly predecessor) distributed in the U.S. prior to September 30, 2021? | Yes ☐ No ☐ |

---

[34] *See* https://angeion-public.s3.amazonaws.com/www.TikTokDataPrivacySettlement.com/docs/TikTok+Claim+Form+Draft+v2+20211019.pdf (last accessed on 12/29/2022).

Transfer of the *In-App Browser* Action would not result in the "just and efficient conduct of the action" within the meaning of Section 1407 when the *Biometric Data* MDL settlement notice appears to exclude users harmed as a result of the conduct alleged in the *In-App Browser* Action from obtaining any forms of relief.

        3.      <u>The Discovery Process in the Two Actions Will Be Materially Different From Each Other</u>

The differing factual allegations of the *Biometric Data* MDL and *In-App Browser* Action will also require vastly different discovery processes. Specifically, as noted above, the crux of the *In-App Browser* Action is Defendants' use of an in-app browser to surreptitiously intercept and monitor every detail of a user's activity **on a third-party website** in real time. The "core claims" in the *Biometric Data* MDL, however, involved the Defendants' collection and use of biometric data from videos uploaded **on the TikTok app**. The *In-App Browser* Action will thus necessarily center around Defendants' in-app browser's insertion of JavaScript code to intercept users' activities on third-party websites, including its creation, its development, the nature, and scale of its use, and whether the in-app browser itself violates the laws alleged by Movant. That effort will involve targeted and specific depositions, interrogatories, and document requests that would not overlap with those issued by the *Biometric Data* MDL plaintiffs.

Further, the *Biometric Data* MDL plaintiffs settled before the *Biometric Data* MDL had been formed, and so "confirmatory" discovery in that action focused on the claims being settled. Thus, transfer of the *In-App Browser* Action to the *Biometric Data* MDL would not promote the just and efficient conduct of the litigation. *See* MDL No. 1960, Dkt. 160 at 1 (vacating a conditional transfer order where "MDL No. 1960 did not involve extensive discovery from which these actions could benefit"). Indeed, the Panel has repeatedly vacated conditional transfer orders where, as here, there are few or no overlapping facts or claims because transfer of

14

those cases would not further the just and efficient conduct of the litigation. *See, e.g.*, MDL No. 2873 (vacating conditional transfer order where lack of common questions of fact did not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation); MDL No. 3010 (vacating conditional transfer order where non-common issues far exceeded the common issues because transfer would not promote just and efficient conduct of the litigation); MDL No. 2406 (vacating conditional transfer order where case subject to transfer did not bring the kinds of claims alleged in MDL 2406 and transfer would neither serve the convenience of the parties and witnesses, nor further the just and efficient conduct of the litigation); MDL No. 2590 (vacating conditional transfer order where unique factual and legal inquiries would likely overwhelm any commonalities that may exist, and transfer would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation).

### C. Transfer and Consolidation or Coordination of the *In-App Browser* Action with the *Biometric Data* MDL Would Not Further the Convenience of the Parties and Witnesses

Transfer under Section 1407(a) also requires that transfer and consolidation or coordination of the action will further "the convenience of the parties and witnesses." The factors considered by this requirement weigh strongly in favor of maintaining the *In-App Browser* Action in the District in which it was filed, the Central District of California. "The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will

be minimized, and the experience, skill, and caseloads of available judges."[35] The balance of these factors weighs in favor of vacating CTO-3.

There is no question that Defendants' conduct occurred and gave rise to Movant's and Class Members' injuries in the Central District of California. Further, Defendant TikTok Inc. is a California corporation with its principal place of business in Culver City, California (located squarely within the Western Division of the Central District of California), and its co-Defendant ByteDance Inc. maintains its principal place of business in Mountain View, California. The *In-App Browser* Complaint further alleges that decisions about the TikTok application were made by executives at TikTok Inc. in conjunction with executives from ByteDance Inc. and foreign TikTok entities. Even then, the majority of those decisions would have had to be operationalized through the TikTok Inc. offices located in the Central District of California. Thus, material witnesses associated with the *In-App Browser* Action's allegations appear to be located in the Central District of California.

Litigation cost and inconvenience would be minimized by vacating CTO-3. Movant will be seeking the depositions of TikTok Inc. employees located in the Central District of California and the production of documents, which are highly likely to be located in the Central District of California at TikTok Inc.'s headquarters in Culver City.

Finally, Culver City is located within the Los Angeles metropolitan area, which is a convenient metropolitan center containing five major airports, including Los Angeles International Airport. Notably, Culver City is located conveniently close to the courthouse in which the *In-App Browser* Action is currently pending. Accordingly, witnesses from within and outside of the Central District of California will be able to access Southern California with ease.

---

[35] MANUAL FOR COMPLEX LITIGATION § 20.1 (4th ed. 2004) (citation omitted).

Factors concerning the convenience of the parties under Section 1407(a) thus militate toward litigating in the Central District of California, and vacating CTO-3.

### III. CONCLUSION

As detailed above, good cause exists to vacate CTO-3. None of the requirements of Section 1407 that warrant the transfer of a case for coordination or consolidation have been met. Instead, the facts and circumstances of the *In-App Browser* Action and the *Biometric Data* MDL unequivocally demonstrate that the *In-App Browser* Action should stay in the Central District of California because it arises from wholly different factual allegations, asserts materially different causes of action, and seeks materially different forms of relief.

As the *Biometric Data* MDL has been terminated and settled, transfer would prejudice the *In-App Browser* Action's unique claims from ever being heard and prevent Movant from obtaining any form of relief for himself and the classes he seeks to represent. Transfer would further inconvenience the parties and witnesses of the *In-App Browser* Action and provide no meaningful measure of just and efficient conduct of the two actions.

For the foregoing reasons, Movant respectfully requests the Panel vacate CTO-3.

Dated:   January 3, 2023                                          Respectfully submitted,

                                                       By:   */s/ Roland Tellis*
                                                             Roland Tellis

                                                             BARON & BUDD, P.C.
                                                             Roland Tellis (SBN 186269)
                                                             rtellis@baronbudd.com
                                                             Sterling Cluff (SBN 267142)
                                                             scluff@baronbudd.com
                                                             David Fernandes (SBN 280944)
                                                             dfernandes@baronbudd.com
                                                             Shannon Royster (SBN 314126)
                                                             sroyster@baronbudd.com

                                      Jay Lichter (SBN 266960)
                                      jlichter@baronbudd.com
                                      15910 Ventura Boulevard, Suite 1600
                                      Encino, CA 91436
                                      Telephone: 818-839-2333
                                      Facsimile: 818-986-9698

                                      *Counsel for Plaintiff and Movant*
                                      *Austin Recht*